# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 17, 2003

The Honorable Joe Driver
Chair, House Committee on Law Enforcement
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0040

Re: Whether the Texas Department of Insurance is authorized to enforce certain provisions of the Health Maintenance Organization Act, TEX. INS. CODE ANN. ch. 20A, against physicians who are not under contract with a health maintenance organization (RQ-0597-JC)

Dear Representative Driver:

Your predecessor as chair of the House Committee on Public Safety, which has been renamed the House Committee on Law Enforcement, asked about the authority of the Texas Department of Insurance under the Health Maintenance Organization Act, TEX. INS. CODE ANN. ch. 20A (Vernon 1981 & Supp. 2003) ("the Act"), with respect to certain billing practices by physicians who are not under contract with a health maintenance organization ("HMO"). Your predecessor explained that sometimes a physician who has not contracted with an HMO will treat an HMO enrollee at a facility, such as a hospital, that has contracted with the HMO. Generally in these situations, the physician will first seek payment from the HMO, but, if the HMO does not pay in full, the physician will send a bill for the remaining balance to the HMO enrollee.[1] This practice is called "balance billing." Request Letter, *supra* note 1 (Memorandum at 2). Your predecessor averred that the Texas Department of Insurance, in addressing enrollee complaints about this practice, "has recently attempted to enforce the 'hold harmless' provisions of HMO contracts against physicians who have not contracted with HMOs," *id.* (Memorandum at 1), and asked about the Department's authority with regard to balance billing by these physicians, *id.* at 1.

Under the Act, the term "[h]ealth maintenance organization" "means any person who arranges for or provides a health care plan, a limited health care service plan, or a single health care service plan to enrollees on a prepaid basis." TEX. INS. CODE ANN. art. 20A.02(n) (Vernon Supp.

---

[1]Letter from Honorable Bob Turner, Chair, House Committee on Public Safety, to Honorable John Cornyn, Texas Attorney General (Aug. 27, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

2003).[2] The Act requires an HMO to establish a network of physicians and other providers with which it contracts to provide services to enrollees. *See id.* arts. 20A.04(a)(14)-(15), 20A.05(a); *see also id.* art. 20A.02(r) (defining "physician"), art. 20A.02(t) (defining "provider" to include "any person other than a physician, including a licensed doctor of chiropractic, registered nurse, pharmacist, optometrist, registered optician, acupuncturist, pharmacy, hospital, or other institution or organization or person that is licensed or otherwise authorized to provide a health care service in this state"). The term "provider" includes hospitals and other health care facilities. *See id.* art. 20A.02(t). An "enrollee" is "an individual who is enrolled in a health care plan, including covered dependents." *Id.* art. 20A.02(h).

Significantly, article 20A.18A(g) requires that "[a]ll contracts or other agreements between a health maintenance organization and a physician or provider shall specify that the physician or provider will hold an enrollee harmless for payment of the cost of covered health care services in the event the health maintenance organization fails to pay the provider for health care services." *Id.* art. 20A.18A(g). As the request letter explains, "[p]hysicians and providers that participate in an HMO's network contractually agree to predetermined rates for covered services, and the 'hold harmless' clauses in their contracts require network physicians to accept payment from the HMO as payment in full." Request Letter, *supra* note 1 (Memorandum at 1).

Enrollees may receive some covered medical services from physicians and providers who are not part of the HMO's network. Generally, the Act provides that an HMO must compensate those physicians and providers at an agreed or the "usual and customary" rate. The Act requires, for example, that an HMO's application for a certificate of authority include "documentation demonstrating that the health maintenance organization will pay for emergency care services performed by non-network physicians or providers at the negotiated or usual and customary rate." TEX. INS. CODE ANN. art. 20A.04(a)(16) (Vernon Supp. 2003). And, pursuant to article 20A.09(f), if medically necessary covered services are not available through network physicians or providers, "the health maintenance organization, on the request of a network physician or provider, within a reasonable period, shall allow referral to a non-network physician or provider and shall fully reimburse the non-network physician or provider at the usual and customary or an agreed rate." *Id.* art. 20A.09(f).

Your predecessor asked primarily whether the Act prohibits a physician who is not under contract with an HMO "from recovering the balance of billed charges from an HMO enrollee." Request Letter, *supra* note 1.

---

[2]*See also* TEX. INS. CODE ANN. art. 20A.02(*l*) (Vernon Supp. 2003) ("'Health care plan' means any plan whereby any person undertakes to provide, arrange for, pay for, or reimburse any part of the cost of any health care services; provided, however, a part of such plan consists of arranging for or the provision of health care services, as distinguished from indemnification against the cost of such service, on a prepaid basis through insurance or otherwise."), *id.* art. 20A.02(m) ("'Health care services' means any services, including the furnishing to any individual of pharmaceutical services, medical, chiropractic, or dental care, or hospitalization or incident to the furnishing of such services, care, or hospitalization, as well as the furnishing to any person of any and all other services for the purpose of preventing, alleviating, curing or healing human illness or injury a limited health care service plan, or a single health care service plan.").

The Act does not require a physician who is not under contract with an HMO to hold an enrollee of the HMO harmless. Article 20A.18A(g) requires that "[a]ll contracts or other agreements between a health maintenance organization and a physician or provider shall specify that the physician or provider will hold an enrollee harmless for payment of the cost of covered health care services in the event the health maintenance organization fails to pay the provider for health care services." TEX. INS. CODE ANN. art. 20A.18A(g) (Vernon Supp. 2003). The statutory requirement that a physician hold an enrollee harmless for the cost of covered health care services is imposed by the physician's contract with the HMO. The statutory requirement does not exist absent a contract. Nor does the Act otherwise prohibit a physician who is not under contract with an HMO from billing an enrollee of the HMO for charges not paid by the HMO.

The Texas Department of Insurance does not disagree. Indeed, it expressly acknowledges that the Act "*per se* does not prohibit a physician that is not under contract with an HMO from balance billing an HMO enrollee."[3] The Department also asserts, however, that the Act "allows an HMO to contract to ensure that a physician rendering services . . . in a network facility has agreed to honor the facility's hold harmless agreement." TDI Brief, *supra* note 3, at 6. Our conclusion that the Act does not prohibit a physician who is not under contract with an HMO from balance billing assumes that the physician has not entered into an agreement with the HMO or the network facility that would require the physician to hold the enrollee harmless. It is beyond the scope of your predecessor's query whether state law permits a network facility to require non-network physicians with privileges at the facility to honor the facility's hold harmless agreement with an HMO[4] and we do not address that issue.

Your predecessor also asked about the Texas Department of Insurance's authority to enforce the Act against physicians who are not under contract with an HMO. He specifically asked, "Does the . . . Act authorize the Texas Department of Insurance to enforce provisions of the . . . Act against physicians [who] are not under contract with an HMO?" Request Letter, *supra* note 1. We answer this very broad question only with respect to the practice of balance billing.

The Department of Insurance acknowledges that the Act does not authorize it to enforce the Act to prohibit a physician who is not under contract with an HMO from balance billing an enrollee. *See* TDI Brief, *supra* note 3, at 5 ("[the Act] does not authorize TDI to enforce provisions of the HMO Act to prohibit physicians from balance billing enrollees"). We agree. The Department is not

---

[3]Brief from Sara Shiplet Waitt, Senior Associate Commissioner, Texas Department of Insurance, to Susan Gusky, Chair, Opinion Committee, Office of the Attorney General at 6 (Nov. 4, 2002) (on file with Opinion Committee) [hereinafter TDI Brief].

[4]*Compare* TDI Brief at 4 ("the department believes the most efficient way to resolve this problem, under the current legal framework, is for an HMO to require its contracted facilities, including hospitals, to require physicians practicing there to honor the facility's hold harmless agreement with the HMO"), *with* Brief from Lee A. Spangler, Assistant General Counsel, Texas Medical Association, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General at 4 (Oct. 7, 2002) (on file with Opinion Committee) ("a hospital cannot bind a physician to the terms of a contract to which it agrees"), *and* Supplemental Brief from Lee A. Spangler, Assistant General Counsel, Texas Medical Association, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General (Dec. 6, 2002) (on file with Opinion Committee).

authorized to insist that a physician who is not under contract with an HMO refrain from balance billing an enrollee of the HMO because the Act does not prohibit the physician from balance billing the enrollee.[5] *See* TEX. INS. CODE ANN. art. 20A.18A(g) (Vernon Supp. 2003) ("*All contracts or other agreements* between a health maintenance organization and a physician or provider shall specify that the physician or provider will hold an enrollee harmless for payment of the cost of covered health care services in the event the health maintenance organization fails to pay the provider for health care services.") (emphasis added).

---

[5]Again, we assume that the physician has not entered into an agreement with the HMO or the network facility that would require the physician to hold the enrollee harmless.

## S U M M A R Y

The Health Maintenance Organization Act, TEX. INS. CODE ANN. ch. 20A (Vernon 1981 & Supp. 2003), does not prohibit a physician who is not under contract with an HMO from billing an HMO enrollee for charges not paid by the HMO. The Department of Insurance is not authorized to enforce the Act to prohibit such a physician from balance billing an enrollee of the HMO.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee